# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

SANDRA NICHOLS,

    Plaintiff,

v.          CV 216-69

MURRAY FORD OF KINGSLAND
INC., and S.E. GA FORD, INC.
d/b/a
LILLISTON FORD OF KINGSLAND,

    Defendants.

## ORDER

Before the Court is Defendant Murray Ford of Kingsland's ("Murray Ford") Motion to Dismiss or, in the Alternative, Motion to Stay Proceedings and Compel Arbitration (Dkt. No. 16). For the reasons stated below, Defendant's motion to Stay Proceedings and Compel Arbitration (Dkt. No. 16) is **GRANTED**.

## BACKGROUND

The facts stated herein are taken solely from Plaintiff Sandra Nichols' ("Plaintiff") Complaint and are assumed to be true pursuant to Rule 12(b)(6). In February 2015, Nichols was hired to work as a full-time Sales Representative by Defendant Lilliston Ford of Kingsland ("Lilliston Ford"). Dkt. No. 1 ¶

14. Plaintiff alleges that Lilliston Ford employee Mike Hanley ("Hanley") made several sexually charged comments toward her during a business trip. Id. ¶¶ 18-20. She alleges that this eventually escalated to forcible kissing and groping. Id. For months afterwards, Plaintiff alleges that she endured more groping and sexually explicit comments from Hanley. Id. ¶¶ 29-30.

Plaintiff alleges that she reported the February incident to her manager, Stephen Ardman ("Ardman"), on May 9, 2015. Id. ¶ 32. The harassment allegedly continued. Plaintiff later reiterated her concerns to Ardman, who allegedly became upset with her. Id. ¶ 36. Plaintiff claims that she ultimately gave a written complaint to the owner of Lilliston Ford, Jedon Tanner-Lilliston ("Ms. Tanner-Lilliston"). Id. ¶ 37. Plaintiff alleges that Ms. Tanner-Lilliston assured Plaintiff that she would fix the problem, but again, the harassment continued. Id. Plaintiff alleges that Ardman subsequently turned on her and began retaliating against her with Hanley. Id.

On September 1, 2015, Lilliston Ford was purchased by Murray Ford. Id. ¶ 45. On September 4, 2015, Plaintiff alleges that she notified the owners of Murray Ford about the harassment and retaliation she was suffering. Id. ¶ 46. On September 14, 2015, Plaintiff was terminated. Id. ¶ 47. She further alleges she was not paid commission for three vehicles sold when working

for Murray Ford. Id. ¶ 48. Plaintiff asserts her termination and unpaid commission was in retaliation for reporting Hanley's harassment. She subsequently filed a Complaint with this Court on May 13, 2016.

Murray Ford now moves to dismiss on the basis that Plaintiff is required to arbitrate this matter before the Court can exercise jurisdiction in this case. Dkt. No. 16.

**LEGAL STANDARD**

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Although a complaint need not contain detailed factual allegations, it must contain sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

**DISCUSSION**

AO 72A
(Rev. 8/82)

Murray Ford seeks to enforce arbitration and dismiss this action. "The Federal Arbitration Act ('FAA') generally governs the validity of an arbitration agreement." Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1329 (11th Cir. 2014), cert. den'd, 134 S. Ct. 2886 (2014). "The FAA was 'enacted in 1925 as a response to judicial hostility to arbitration.'" Id. (quoting CompuCredit Corp. v. Greenwood, 565 U.S. --, --, 132 S. Ct. 665, 668 (2012)). "The FAA thus 'embodies a liberal federal policy favoring arbitration agreements' and seeks 'to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation.'" Id. (quoting Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005)). Consistent with the text of the FAA, "courts must 'rigorously enforce' arbitration agreements according to their terms." Am. Express Co. v. Italian Colors Rest., -- U.S. --, --, 133 S. Ct. 2304, 2309 (2013) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)).

The FAA's primary substantive provision provides that a written agreement to arbitrate a controversy arising out of that contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1231 (11th Cir. 2012)

AO 72A
(Rev. 8/82)

(explaining that arbitration agreements are on "equal footing with other contracts"). "[A] court can decline to enforce an arbitration agreement under the FAA only if the plaintiff[] can point to a generally applicable principle of contract law under which the agreement could be revoked." Caley, 428 F.3d at 1371. State law, here, Georgia law, generally governs whether an enforceable contract exists; however, the FAA preempts state law to the extent that it treats arbitration agreements differently than other contracts. Id. at 1367.

In support of its Motion to Dismiss, Murray Ford relies on the following arbitration agreement, signed by Plaintiff, which subjects all actions against Murray Ford to alternative dispute resolution:

> I agree that any dispute of a legal nature arising under federal, state, or local law between me and the Company, including any such claim regarding Company property, discrimination, harassment, or any other legal dispute relating to my employment or arising from any labor, employment, or civil rights law, will be subject to final and binding arbitration in accordance with the Company's Dispute Resolution Policy. I understand that the Arbitrator has the same authority, to award damages and other relief, as does a court of law. I also understand that while the Employee Handbook is otherwise subject to change at the Company's discretion, this Agreement to Arbitrate and the Company's Dispute Resolution policy will be binding and irrevocable for the Company and me as written.

Dkt. No. 16-3 p. 2.

As an initial matter, the Court notes that the Eleventh Circuit has held that "statutory claims, including Title VII

5

claims, can be subject to mandatory arbitration." Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000)(citation omitted). Therefore, while this case involves a Title VII claim it may nonetheless be subject to a valid arbitration agreement. Therefore, the Court must look to the actual language of the agreement itself to determine whether the arbitration clause applies. Plaintiff urges the Court to find that the arbitration clause does not mandate arbitration here. She points to language in the Murray Ford employee handbook indicating that arbitration is not mandatory, but instead, an "option."[1] Further, Plaintiff points to another provision in the employee handbook that arbitration "can," rather than "shall," apply to "any actionable issue." Dkt. No. 17 p. 3.

There is no dispute that Plaintiff signed the arbitration agreement within the notice of acknowledgement form cited by Murray Ford. Instead, Plaintiff argues that the arbitration clause is unenforceable given that the mandatory language in the notice of acknowledgement contradicts the language in the employee handbook. Dkt. No. 17 p. 5. Further, Plaintiff argues that the arbitration agreement is unenforceable because it is

---

[1] "In the event you are still not satisfied with the decision presented, you have the option of requesting binding arbitration between you and the company. Arbitration can apply to any actionable issue, including claims regarding wrongful discharge, employment discrimination, harassment, or any other dispute relating to your employment or arising under any labor, employment, or civil rights law." Dkt. No. 16-2 p. 3.

missing key terms. Id. Finally, Plaintiff argues that the arbitration agreement is unconscionable. Id.

The Court finds that there is nothing innately contradictory about the arbitration agreement and the employee handbook's language about the "option" to arbitrate. Plaintiff urges the Court to read the employee handbook to indicate that she and she alone had the power to arbitrate this matter. No such language exists in the employee handbook. The handbook simply provides notice that the option to arbitrate any dispute can be exercised by Plaintiff, not that Murray Ford cannot exercise *its* right to arbitrate. Indeed, Murray Ford indicated its intent to arbitrate any dispute in the arbitration agreement, which indicates that "any dispute . . . will be subject to final and binding arbitration." Dkt. No. 16-3 p. 1.

Furthermore, the Court rejects Plaintiff's argument that "missing terms" invalidate the arbitration clause. The arbitration agreement is not unenforceable simply because it could be more detailed. Matthews v. Ultimate Sports Bar, LLC, 621 F. App'x 569, 572-73 (11th Cir. 2015) (holding "incompleteness" an insufficient basis to invalidate an arbitration clause). Plaintiff relies heavily on a sister court's opinion in Matthews v. Ultimate Sports Bar, LLC, No. 1:13-CV-2353, 2016 WL 4035655 (N.D. Ga. July 28, 2016), in arguing that 1) the agreement is "incomprehensible" and 2)

incomplete terms should invalidate the agreement. However, the agreement in this case is distinguishable from the agreement in Matthews. The agreement in that case contained broken English resulting in "nonsensical language" that the court could not even understand. Id. at *2. This is plainly not the case here. In addition, the court did not hold that missing terms alone were the reason that the agreement was invalid. Id. Instead, the Matthews court found that the agreement, taken as a whole, was entirely meaningless. Id. Again, this is simply not the case here. Therefore, the Court finds that the agreement is valid.

Finally, the Court turns to Plaintiff's argument that the arbitration clause is unconscionable. Under Georgia law, an unconscionable contract is "such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of." Hall v. Fruehauf Corp., 346 S.E.2d 582, 583 (Ga. Ct. App. 1986). Georgia courts look to the following factors in determining unconscionability: "age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness of and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice." NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 771 (Ga. 1996).

Plaintiff attempts to frame her lack of business

sophistication as a reason why the arbitration agreement is unconscionable. Dkt. No. 17 p. 6. The Court disagrees. A mere lack of sophistication is insufficient to find an agreement unconscionable. Saturna v. Bickley Constr. Co., 555 S.E.2d 825, 827 (Ga. Ct. App. 2001). She also claims that she did not have time to read the agreement sufficiently before she signed it. This argument also has no merit. Under Georgia law, "one signing a document has a duty to read it and is bound by the terms of a document [s]he does not read." Gill Plumbing v. Jimenez, 714 S.E.2d 342, 350 (Ga. Ct. App. 2011).

Furthermore, to the extent that Plaintiff argues that she lacked the bargaining power to renegotiate the agreement or ask for more time to consider the agreement, this argument also fails. "[O]ne may not void a contract on grounds of duress merely because she entered into it with reluctance, the contract is very disadvantageous to her, the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreements." Kramer v. Kroger Co., 534 S.E.2d 446, 450 (Ga. 2000). Thus, the Court rejects Plaintiff's unconscionability argument and the arbitration agreement will be enforced. Thus, the Court finds the arbitration provision of the 2008 Agreement enforceable. As such, the Court will stay this matter pending the resolution

AO 72A
(Rev. 8/82)

9

through arbitration. Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 699 (11th Cir. 1992).

## CONCLUSION

For the reasons set forth above, it is hereby ordered that Defendant Murray Ford of Kingsland's Motion to Dismiss (Dkt. No. 16) is **DENIED**. However, Defendant's alternative Motion to Stay (Dkt. No. 16) is **GRANTED** and the Court orders this action be **STAYED** pending resolution through arbitration.

**SO ORDERED**, this 13th day of January, 2017.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA